**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | | |
|---|---|---|
| PATRICK MAZZONE, ALBERT STEVE SANDLIN, and ANDREW BIESS, | ) ) ) ) | |
|    Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 25-cv-22310 |
| CITY OF MIAMI, a Florida municipal corporation, | ) ) ) | |
|    Defendant. | ) ) | |

<u>**MOTION FOR PRELIMINARY INJUNCTION**</u>
<u>**AND SUPPORTING MEMORANDUM OF LAW**</u>

    Plaintiffs Patrick Mazzone, Albert Steve Sandlin, and Andrew Biess move to preliminarily enjoin Defendant City of Miami from enforcing its aggressive panhandling ordinance, Section 37-6 of the Miami Code of Ordinances ("Ordinance").

<u>**PRELIMINARY STATEMENT**</u>

    In 2000, the City of Miami enacted an Ordinance prohibiting so-called "aggressive" or "obstructive" panhandling. Under the Ordinance, a person who persists in asking for charity more than once can be imprisoned for thirty days. Indeed, Plaintiffs have been arrested by City police officers for violating the Ordinance and have curbed their panhandling—and source of income—for fear of arrest and harassment by the police. Without the Court's intervention, the City will continue to infringe on its residents' constitutional rights. Thus, Plaintiffs seek a preliminary injunction barring the City from enforcing the Ordinance.

1

The case for a preliminary injunction is clear and in line with decisions across the country that bar anti-panhandling laws as unconstitutional. *For one*, Plaintiffs will likely prevail on the merits. Since the Supreme Court's ruling in *Vill. of Schaumberg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) ("charitable appeals for funds, on the street . . . are within the protection of the First Amendment."), it is beyond dispute that begging is speech protected by the First Amendment. And since the Supreme Court's ruling in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), it is beyond dispute that anti-panhandling laws, like the Ordinance, which regulate speech based on content and in a traditional public forum, must satisfy strict-scrutiny review. The Ordinance cannot meet that exacting review. The Ordinance is not narrowly tailored—much less the least restrictive means—to further a compelling government interest. The Ordinance also violates the Fourteenth Amendment because it is impermissibly vague. It fails to provide a person of ordinary intelligence a reasonable opportunity to understand the conduct it prohibits and so invites arbitrary and discriminatory enforcement.

*Further*, continued enforcement of the Ordinance will irreparably harm Plaintiffs because the Ordinance chills their constitutionally protected speech. *Further still*, an injunction will serve the public interest by reinstating First Amendment protections and promoting freedom of speech; whereas the City has no protected interest in enforcing an unconstitutional ordinance.

While City officials may view panhandling as undesirable, criminalizing this form of expression neither addresses the underlying causes of homelessness nor serves as an effective deterrent. Instead, it uses taxpayer resources to punish homeless people without promoting meaningful change. And, most importantly, it chills free speech within the City. Thus, Plaintiffs ask this Court to grant this Motion for Preliminary Injunction enjoining the City of Miami and its agents from enforcing the Ordinance.

## STATEMENT OF FACTS

### A.      The City's Anti-Panhandling Ordinance.

In 2000, the City enacted Ordinance No. 12006 , which prohibits aggressive or

obstructive panhandling:

> It shall be unlawful for a person to intentionally: (1) Aggressively beg; or (2) Obstruct pedestrian or vehicular traffic while begging.

Ordinance No. 12006 was subsequently codified as Miami Code of Ordinances, § 37-6, attached

as **Exhibit A**. The Ordinance defines "beg" as "to ask or solicit for money or goods as a charity,

whether by word, bodily gestures, signs, or other means." *Id.* § (a). And it applies in all public

places within the City. *See id.*

Aggressive Panhandling. First, the Ordinance criminalizes *aggressively begging*, which

"means to beg with the intent to intimidate another person into giving money or goods"—that

is to beg in a way that "make[s] a reasonable person fearful or ***feel compelled to react***." *Id.*

(emphasis added). The Ordinance lists four attributes that may indicate whether begging meets

this amorphous threshold: "(1) Touching the person solicited; (2) Following the person

solicited, or ***persisting in begging after the person solicited has declined the request***; (3)

Using profane or abusive language toward the person solicited; or (4) Using violent or

threatening gestures toward the person solicited." *Id.* (emphasis added).

Obstructive Panhandling. Second, the Ordinance criminalizes panhandling that

"block[s] passage by another person or a vehicle, or [that] require[s] another person or a driver

of a vehicle to take unreasonable evasive action to avoid physical contact." *Id.*

The first violation of the Ordinance is punishable by a fine of not more than $100.00 and

30-days imprisonment; a second and subsequent violation is punishable by a fine of not more

than $200.00 and 60-days imprisonment. *Id.* § (d).

The City has only broadly explained the Ordinance's purpose, stating in the preamble that it was "in the best interest of the residents and for the purpose of safety, general welfare, crime prevention[,] and control." Ordinance No. 120006 (Dec. 14, 2000), attached as **Exhibit B**.

### B.      The City Enforces the Ordinance.

The City has vigorously enforced the Ordinance by citing and arresting hundreds of homeless and impoverished people who ask others for donations in public areas. V. Compl. ¶¶ 5, 23. For context, from January 4, 2023, to December 3, 2024, the City police made 383 arrests for violation of the Ordinance. *See* Records of Arrests in City of Miami under the Ordinance from January 1, 2023 to December 31, 2024, attached as **Exhibit C**. Nearly all of these individuals were subjected to a custodial arrest or citation and were likely taken to jail. V. Compl. ¶ 24.

The City's aggressive criminalization of life-sustaining conduct causes real harms. Such punitive measures are counterproductive: they perpetuate a cycle where homeless persons accrue fines they cannot pay, often leading to arrest and further barriers to stable employment and housing. A growing body of research shows that providing housing to homeless individuals is far more effective and cost-efficient than enforcing laws which place these individuals in custody.[1]

### C.      Plaintiffs Rely on Panhandling for Income.

Plaintiffs Patrick Mazzone, Albert Steve Sandlin, and Andrew Biess are residents of the City and must request donations from others to contribute to their survival. V. Compl. ¶¶ 11–13, 32, 40, 48. Typically, Plaintiffs hold a sign while standing along City streets at intersections or peacefully ask motorists stopped at red lights for donations. *Id.* ¶¶ 28, 37, 45. They do not block

---

[1] Tristia Bauman et al., *No Safe Place: The Criminalization of Homelessness in U.S. Cities*, NATIONAL LAW CENTER ON HOMELESSNESS AND POVERTY (2014), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://homelesslaw.org/wp-content/uploads/2019/02/No_Safe_Place.pdf.

or obstruct traffic and are respectful of the occupants of motor vehicles. Plaintiffs have all been arrested for violating the Ordinance and have been continually harassed and threatened by the police with arrest while soliciting for charitable donations. *Id.* ¶¶ 11–13, 33, 41, 49. Plaintiffs wish to continue to request donations but panhandle less than they want to because they fear they will be arrested and jailed for violating the Ordinance. *Id.* ¶¶ 6, 11–13, 32, 34, 40, 42, 48, 50.

### D.    Miami Has a History of Enforcing Unconstitutional Anti-Panhandling Ordinances.

Since the Supreme Court's 2015 decision in *Reed v. Town of Gilbert*, anti-panhandling laws have faced significant legal challenge and been increasingly invalidated. The *Reed* decision confirmed anti-panhandling laws are presumptively unconstitutional. *Messina v. City of Fort Lauderdale, Fla.*, 546 F. Supp. 3d 1227, 1237 (S.D. Fla. 2021).

The City, however, did not take steps to abide by this jurisprudence. In 2010, the City enacted another panhandling ordinance, codified as § 37-8, which banned soliciting for donations in downtown Miami. But, after *Reed*, the Appellate Division of the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County held that the Ordinance was unconstitutional as a content-based restriction of speech in violation of the First Amendment. 25 Fla. L. Weekly Supp. 505a, Case No. 15-220 AC (Fla. 11th Jud. Cir. Ct., July 11, 2017). But even this ruling did not bring the City into compliance. In 2023, in *White v. City of Miami*, Case No. 23-CV-24783 (S.D. Fla. dismissed May 9, 2024), a plaintiff filed suit because the ***City was still enforcing*** the non-aggressive panhandling ordinance. The case settled and the City repealed § 37-8 in its entirety. Now, the only panhandling prohibition that remains in the City is the Ordinance at issue in this case.

## LEGAL STANDARDS

To obtain preliminary injunctive relief, the moving party must establish: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened harm outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that, if issued, the injunction would not be adverse to the public interest. *LaCroix v. Town of Fort Myers Beach, Fla.*, 38 F.4th 941, 954 (11th Cir. 2022). When the nonmovant is the government, the third and fourth requirements can be consolidated. *Messina*, 546 F. Supp. 3d at 1254. The first factor, "a substantial likelihood of success on the merits," requires a showing of "only likely or probable, rather than certain, success." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005).

## ARGUMENT

This Court should follow the long, unbroken line of cases enjoining anti-panhandling laws as unconstitutional under the First Amendment. ***First,*** Plaintiffs are likely to succeed on the merits: the Ordinance is subject to and fails strict-scrutiny review because it regulates public-fora speech based on content, but is not narrowly tailored to serve any compelling state interest. What's more, the Ordinance is unconstitutionally vague because it fails to provide clear notice of the prohibited conduct and thus leads to arbitrary and discriminatory enforcement. ***Second,*** the deprivation of Constitutional rights is an irreparable injury that will continue until the City stops enforcing the Ordinance. ***Third,*** an injunction is not adverse to public interest, nor does it injure the City, as the City has no interest in enforcing an unconstitutional ordinance.

I.      **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AND FOURTEENTH AMENDMENT CLAIMS.**

A.      **The Ordinance Is an Unconstitutional Content-Based Prohibition of Protected Speech.**

A law regulating speech based on its communicative content in a traditional public forum is subject to strict-scrutiny review and presumptively unconstitutional. *See McDonald v. City of Pompano Beach, Fla.*, 556 F. Supp. 3d 1334, 1351 (S.D. Fla. 2021) ("In a traditional public forum, content-based restrictions on speech are subjected to strict scrutiny"); *Messina*, 546 F. Supp. 3d at 1237 ("Laws subject to strict scrutiny are 'presumptively unconstitutional'") (citation omitted). To survive strict-scrutiny review, the government has the burden to prove that the law is narrowly tailored to achieve a compelling governmental interest and that it is the least restrictive means of doing so. *Reed*, 576 U.S. at 163 (narrowly tailored); *McCullen v. Coakley*, 573 U.S. 464, 478 (2014) (least restrictive means); *Reed*, 576 U.S. at 171–72 (burden on government). When it cannot, as here, the law violates the First Amendment.

1.      *The Ordinance is subject to strict scrutiny.*

The Ordinance is subject to strict scrutiny because it regulates speech in traditional public fora based on its communicative content. *Messina*, 546 F. Supp. 3d at 1237 (citing *Reed*, 576 U.S. at 163).

*First,* the Ordinance regulates speech in traditional public fora. A traditional public forum is an area that has "'traditionally been available for public expression,'" including quintessentially, "streets, sidewalks, and parks . . .  because those settings 'have immemorially been held in trust for the use of the public, and time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *McDonald*, 556 F. Supp. 3d at 1351; *see Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

Here, the Ordinance applies in those same quintessentially public fora: it applies in any "[p]ublic place," which it defines as any "area generally visible to public view and includes alleys, bridges, buildings, driveways, parking lots, parks, plazas, sidewalks and streets open to the general public, including those that serve food or drink or provide entertainment, and the doorways and entrances to buildings or dwellings and the grounds enclosing them." Miami Code of Ordinances, § 37-6(a). The preamble, too, states that the Ordinance targets "panhandling [that] occurs *on the streets and sidewalks* within the jurisdiction of the City of Miami, Florida." Ex. B at 1 (emphasis added). There is no question the Ordinance—which applies in all public, and many private,[2] spaces in the City—regulates speech in a traditional public forum.

**Second,** the Ordinance is a content-based restriction—that is, it regulates speech based on its communicative content. A law regulates speech based on its communicative content when it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. This "requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id*. Whether speech is defined by "subject matter" or "by its function or purpose," these are distinctions "based on the message a speaker conveys" and the law in question is subject to strict scrutiny. *Id*.

The Ordinance falls squarely within that camp. It prohibits "begging," which it defines as "ask[ing] or solicit[ing] for money or goods as a charity, whether by word, bodily gestures, signs, or other means." Miami Code of Ordinances, § 37-6(a). But it prohibits no other subjects of speech or solicitation.  Thus, a person may not ask for money, but may ask for votes, to join a church, to sign a petition, for directions, or for any reason other than seeking charity. One Court

---

[2] It applies to any area "generally visible to public view," and would therefore bar asking for funds even while standing on one's own property, if visible from the street.

in this District recently emphasized this content-based quality when declaring another

panhandling ordinance unconstitutional:

> In that way, the law limits in-person, vocal solicitations for money or things of
> value. But it doesn't touch other topics of discussion. So, for instance, people are
> free to solicit pedestrians—in person and vocally—for advice, for directions, for
> their prayers, for a signature on a petition, to read a treatise by John Locke, to join
> a political party, to visit a restaurant, to come to church, to put on Tefillin, to shake
> a Lulav, to kiss an Etrog, to join a softball team, etc. As long as the speaker doesn't
> say something to the effect of "I'm poor, please help" or "Do you have some spare
> change?" he may approach a stranger anywhere in the City and utter any other
> message. Because the Panhandling Ordinance prohibits one topic and allows all
> others, it is content based.

*Messina*, 546 F. Supp. 3d at 1240–41. That passage describes this Ordinance exactly.

So too, it describes the legion of anti-panhandling laws that Courts have uniformly found

to be content-based restrictions subject to strict-scrutiny review. *See*, *e.g. Messina*, 546 F. Supp.

3d at 1240–43; *Rodgers v. Bryant*, 942 F.3d 451, 457 (8th Cir. 2019); *Norton v. City of

Springfield, Ill.*, 806 F.3d 411, 413 (7th Cir. 2015); *Scott v. City of Daytona Beach Fla.*, 740 F.

Supp. 3d 1205, 1215 (M.D. Fla. 2024); *Narce v. Mervilus*, No. CV 23-200 (BAH), 2023 WL

7128475, at *8 (D.D.C. Oct. 30, 2023); *Henagan v. City of Lafayette*, No. 6:21-CV-03946, 2022

WL 4553055, at *5 (W.D. La. Aug. 16, 2022), *objections overruled*, No. 6:21-CV-03946, 2022

WL 4546721 (W.D. La. Sept. 27, 2022); *Fernandez v. St. Louis Cnty., Mo.*, 461 F. Supp. 3d 894,

898 (E.D. Mo. 2020); *Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*, 470 F.

Supp. 3d 888, 895, 903 (S.D. Ind. 2020); *Brown v. Gov't of D.C.*, 390 F. Supp. 3d 114, 125

(D.D.C. 2019); *Leatherman v. Watson*, No. 17-CV-05610-HSG, 2019 WL 827633, at *3 (N.D.

Cal. Feb. 21, 2019); *Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 666–67 (E.D. La. 2017);

*Homeless Helping Homeless, Inc. v. City of Tampa, Fla.*, No. 8:15-CV-1219-T-23AAS, 2016

WL 4162882, at *4 (M.D. Fla. Aug. 5, 2016); *Thayer v. City of Worcester*, 144 F. Supp. 3d 218,

233–34 (D. Mass 2015); *McLaughlin v. City of Lowell*, 140 F. Supp. 3d 177, 185–87, 191 (D.

Mass. 2015); *Browne v. City of Grand Junction, Colo.*, 136 F. Supp. 3d 1276, 1288 (D. Colo. 2015).

The Ordinance here is no different and should be treated no differently: because it regulates speech based on that speech's communicative content, it is subject to the most exacting, strict-scrutiny review.

### 2.      *The Ordinance fails strict scrutiny.*

The Ordinance fails strict scrutiny because the Ordinance is not narrowly tailored to achieve any compelling state interest—much less, the least restrictive means of doing so.

Strict scrutiny "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest," *Reed*, 576 U.S. at 171 (citation omitted); indeed, it must be "the least restrictive means of achieving a compelling state interest." *McCullen*, 573 U.S. at 477. This is a "heavy burden," *Indiana C.L. Union*, 470 F. Supp. 3d at 903, as "content-based laws target[ing] speech based on its communicative content . . . are presumptively unconstitutional," *Reed*, 576 U.S. at 155, and "the application of strict scrutiny *usually* sounds the death knell for a challenged ordinance, particularly in the arena of the First Amendment." *Messina*, 546 F. Supp. 3d at 1239 (emphasis in original).

Indeed, numerous courts have struck down nearly identical aggressive panhandling ordinances because they fail or—at the preliminary injunction stage, are likely to fail—strict scrutiny. *See, e.g., Messina*, 546 F. Supp. 3d at 1231, 1243–46, 1248–49 (ordinance prohibiting "approaching someone in a manner that would lead a 'reasonable person to believe' that he is 'being threatened with either imminent bodily injury" and "requesting a donation after a person has 'given a negative response to the initial request"); *Rodgers*, 942 F.3d at 453–54, 457 (ordinance prohibiting "asking for anything as charity or a gift. . . In a harassing or threatening manner" or "In a way likely to cause alarm to the other person."); *Scott*, 740 F. Supp. 3d at

1211–12, 1217 (ordinance prohibiting panhandling "by touching the person being solicited"; or "using any gesture or act intended to cause a reasonable person to be fearful or feel compelled to accede to the solicitation"); *Thayer*, 144 F. Supp. 3d at 225, 229, 235–37 (ordinance prohibiting conduct "intended or is likely to cause a reasonable person to fear bodily harm to oneself or to another . . . ; continuing to solicit from a person after the person has given a negative response to such soliciting; . . . [or] following the person being solicited"); *Browne*, 136 F. Supp. 3d at 1280–81, 1291–94 (ordinance prohibiting conduct "that is intimidating, threatening, coercive or obscene and that causes the person solicited to reasonably fear for his or her safety; . . . [or] If the person panhandling knowingly continues to request the person solicited for money or other thing of value after the person solicited has refused the panhandler's request;"); *McLaughlin*, 140 F. Supp. 3d at 182–83, 187–96 (City ordinances prohibiting aggressive panhandling, under which aggressive panhandling is defined as one of ten circumstances, including where panhandling that is "intended or likely to cause a reasonable person to fear bodily harm to oneself," harm to another, or property damage). The same fate should follow here.

> a.   The City has not offered a compelling state interest for the Ordinance.

To start, the City has not offered any specific interest—compelling or not—for the Ordinance. The Preamble to the Ordinance states that its "purpose" is "safety, general welfare, crime prevention[,] and control," Ex. B 1–2. This language, however, is so general that it is all but meaningless—it could apply to every ordinance in the City. *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011) ("The State must specifically identify an 'actual problem' in need of solving, . . ., and the curtailment of free speech must be actually necessary to the solution") (quotation and citation omitted); *see also Consol. Edison Co. of N.Y. v. Pub. Serv.*

*Comm'n of N.Y.*, 447 U.S. 530, 543 (1980) ("Mere speculation of harm does not constitute a compelling state interest") (citation omitted).

In any event, even if these counted as specific interests, without more, they fall well short of *compelling*. *See Indiana C.L. Union*, 470 F. Supp. 3d at 904 (simply stating a problem "is not enough to show a compelling state interest"); *Consol. Edison*, 447 U.S. at 543 ("Mere speculation of harm does not constitute a compelling state interest"); *see also Messina*, 546 F. Supp. 3d at 1244 (invalidating aggressive panhandling ordinance for which the city offered no "evidence in support of its public-safety rationale") (emphasis omitted). The City "must establish that the asserted harms are 'real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.'" *Scott*, 740 F. Supp. 3d 1216–17 (citing *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 664 (1994)). It has not.

> **b.**     *The Ordinance is not narrowly tailored to achieve any assumed compelling state interest.*

Speech-abridging laws fail the narrow-tailoring requirement where they "burden substantially more speech than is necessary to further the government's legitimate interests[,]" and are therefore fatally overinclusive. *McCullen*, 573 U.S. at 486. The Ordinance here is ***fatally overinclusive*** for several reasons.

***First,*** it applies to all public—and many private—spaces in the City, rather than applying only to those locations where the City can (hypothetically) prove a compelling problem exists. *See McCullen*, 573 U.S. at 493 (under intermediate scrutiny, striking down law imposing speech buffer zones around abortion clinics, in part, because the law applied statewide instead of targeting the one problematic clinic); *Cutting v. City of Portland, Maine*, 802 F.3d 79, 82, 90 (1st Cir. 2015) (ordinance prohibiting standing on a median, which city enforced against panhandlers, was not narrowly tailored because it was "geographically over-inclusive"); *Reynolds v.*

*Middleton*, 779 F.3d 222, 231-232 (4th Cir. 2015) (under intermediate scrutiny, holding that ordinance prohibiting roadway solicitation was not narrowly tailored when it applied to all roads regardless of location and traffic volume).

    **Second,** the Ordinance is over-inclusive because it "sweep[s] in the speech activities of countless panhandlers who will never act violently towards another." *Messina*, 546 F. Supp. 3d at 1246. The City cannot possibly prove that the least restrictive means of addressing any issue— let alone a compelling one—is to prohibit entirely innocuous conduct that "would make a reasonable person . . . feel compelled to react" by, for instance, making a second request or pursuing the person solicited.[3] *See McLaughlin*, 140 F.Supp.3d at 194, 195 (giving panhandlers only one opportunity to convey their message, without a chance to follow up, was more restrictive than necessary). This "burden[s] substantially more speech than is necessary to further the government's legitimate interests," *Scott*, 740 F. Supp. 3d at 1217 (citing *McCullen*, 573 U.S. at 486), as it "effectively prohibit[s] any repeated request for charity, which does nothing to promote public safety." *Scott*, 740 F. Supp. 3d at 1217; *see Browne*, 136 F. Supp. 3d 1276 at 1292. As a result, "the City has indisputably banned substantial amounts of protected (and harmless) activities in a way that doesn't seem likely to avert dangerous encounters." *Messina*, 546 F. Supp. 3d at 1245.

    **Third,** much of the behavior the City is attempting to outlaw through the Ordinance is already proscribed by Florida's criminal laws, as shown by the chart below.

| Provision of the Ordinance | Existing Law Providing Conduct Is Innocuous or Already Prohibiting Conduct |
|---|---|
| "Touching the person solicited." Miami Code of Ordinances, § 37-6(a). | Fla. Stat. § 784.03(1)(a) ("The offense of battery occurs when a person: 1. Actually and |

---

    [3] Indeed, as anyone who has been confronted by girl scouts or Greenpeace activists can attest, these features can be hallmarks of effective and persuasive speech.

| | intentionally touches or strikes another person against the will of the other"). |
|---|---|
| "Following the person solicited, or persisting in begging after the person solicited has declined the request." Miami Code of Ordinances, § 37-6(a). | Fla. Stat. § 748.048 ("A person who willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person commits the offense of stalking"). |
| "Using profane or abusive language toward the person solicited." Miami Code of Ordinances, § 37-6(a). | Fla. Stat. § 877.3 ("Whoever commits such acts as are of a nature to . . . affect the peace and quiet of persons who may witness them . . . or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree"). Fla. Stat. § 856.021(1) ("It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity"). |
| "Using violent or threatening gestures toward the person solicited." Miami Code of Ordinances, § 37-6(a). | Fla. Stat. § 784.01(1) ("An 'assault' is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent"). |
| "Obstruct pedestrian or vehicular traffic means to walk, stand, sit, lie, or place an object in such a manner as to block passage by another person or a vehicle, or to require another person or a driver of a vehicle to take unreasonable evasive action to avoid physical contact." Miami Code of Ordinances, § 37-6(a). | Miami Code of Ordinances, § 54-2(c) ("It is unlawful for any person . . . (1) To so stand, loiter, walk, sit, lie, or camp upon any street, sidewalk or public right-of-way in the city so as to obstruct free passage over, on or along said street, sidewalk or public right-of-way, after a request by a law enforcement officer to move on so as to cease blocking or obstructing free passage thereon"). |

"The City may not deem criminal activity worse because it is conducted in combination with protected speech, and it certainly may not do so in order to send a message of public disapproval of that speech on content based grounds." *McLaughlin*, 140 F. Supp. 3d at 193; *see Messina*, 546 F. Supp. 3d at 1245 ("But the State has already criminalized assault and battery, . . . and the City

doesn't explain why a batterer should receive *enhanced* penalties solely because, before the assault, he asked the victim for change") (emphasis in original). Doing so would be antithetical to the First Amendment, which allows for and even embraces the fact that "on streets and sidewalks a person might be 'confronted with an uncomfortable message' that they cannot avoid; this 'is a virtue, not a vice.'" *Id*. at 189 (quoting *McCullen*, 573 U.S. at 476). Indeed, "[t]here is nothing illegal about being poor and needing assistance, and [a city] cannot take 'a sledgehammer to a problem that can and should be solved with a scalpel.'" *Blitch*, 260 F. Supp. 3d at 671 (quoting *Browne*, 136 F. Supp. 3d at 1294).

Further still, the Ordinance fails narrow tailoring because it is at the same time ***fatally underinclusive***. *See Reed*, 135 S. Ct. at 2232 ("In light of this underinclusiveness, the Town has not met its burden to prove that its Sign Code is narrowly tailored to further a compelling government interest."); *Scott*, 740 F. Supp. 3d at 1217 ("a law can fail narrow tailoring as underinclusive when the law targets one type of speech, but not another that poses the same danger to the government's asserted interest") (citing *Reed*, 576 U.S. at 172, 135 S.Ct. 2218). The fact that the Ordinance proscribes *only* aggressive solicitation for money and not other types of aggressive solicitation equally as intrusive, such as "obnoxious wolf-whistles and catcalls, earnest political entreaties, and the like," makes the Ordinance under-inclusive. *Clatterbuck v. City of Charlottesville*, 92 F. Supp. 3d 478, 492 (W.D. Va. 2015); *see Rodgers*, 942 F.3d at 457 (finding that other types of solicitation done in an aggressive manner or in a way that creates a traffic hazard are equally as dangerous as panhandling).

A Court in this District has confirmed that both under-inclusive and over-inclusive laws fail the narrow tailoring requirement in the aggressive panhandling context:

> [W]hen a city attempts to justify a panhandling ordinance by reference to public
> safety, it still has a steep hill to climb—even where, as here, the ordinance targets

so-called "aggressive panhandling," which (at the very least) sounds dangerous. That's because "aggressive panhandling" ordinances often sweep in much more speech than is necessary to promote public safety—including speech that is entirely innocuous—while omitting conduct that's genuinely threatening. Where that's true—viz., that the law is both under- and over-inclusive—then it's not narrowly tailored to accomplish the state's compelling interests.

*Messina*, 546 F. Supp. 3d at 1240.  The Ordinance at issue here is no different.

In sum, the Ordinance regulates speech based on its content in a traditional public forum. The City cannot prove that it is narrowly tailored to, or the least restrictive means of achieving, any compelling government interest. It therefore violates the First Amendment.

### 3.    The Ordinance is not the least restrictive means of achieving any compelling state interest.

The Ordinance also cannot survive strict scrutiny because the City cannot show why less burdensome alternatives would be ineffective. *Blitch*, 260 F. Supp. 3d at 671 (citation omitted). To do so, "the City must 'demonstrate that alternative measures that burden substantially less speech would fail to achieve the government interests.'" *McLaughlin*, 140 F. Supp. 3d at 192 (citing *Reed*, 135 S.Ct. at 2231). The City cannot do so because, as shown above, the least restrictive means of proscribing any "dangerous" conduct outlawed by the Ordinance would be to simply prosecute this conduct using the laws already in place. The City can offer no justification as to why "[i]t subjects those who assault while engaged in particular expressive acts to increased liability." *Id*. at 193.

### B.    The Ordinance Violates the Fourteenth Amendment Under the "Void for Vagueness" Doctrine.

The Ordinance is likely unconstitutional for the independent, yet reinforcing, reason that it is impermissibly vague. Because it grounds criminal liability in a subjective, third-party standard, the Ordinance fails to provide clear notice of prohibited conduct and invites arbitrary and discriminatory enforcement.

16

A law is void for vagueness under the Fourteenth Amendment if it either (i) fails to provide a person of ordinary intelligence a reasonable opportunity to understand the conduct it prohibits; or (ii) allows arbitrary and discriminatory enforcement. *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1319 (11th Cir. 2017). Vague laws regulating the content of speech are doubly problematic, raising "First Amendment concerns because of [their] obvious chilling effect on free speech." *Reno v. ACLU*, 521 U.S. 844, 871–72, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). Thus, an ordinance "so vague and indefinite, in form and as interpreted, as to permit within the scope of its language the punishment of incidents fairly within the protection of the guarantee of free speech is void, on its face, as contrary to the Fourteenth Amendment." *Wollschlaeger,* 848 F.3d at 1320; *see also HM Florida-ORL, LLC v. Governor of Florida, et al.*, No. 23-12170, slip op. at 32 (11th Cir. 2025) (reaffirming that the "void-for-vagueness rule" "applies with 'heightened' vigor to laws touching on protected speech").

Here, the Ordinance unconstitutionally defines "intent to intimidate" based on the subjective perceptions of third parties, rather than objective criteria. An individual of ordinary intelligence cannot reasonably predict how their actions might be perceived by others, due to the vast spectrum of reactions that a "reasonable" person may have. *See Coates v. City of Cincinnati*, 402 U.S. 611 (1971); *Wollschlaeger,* 848 F.3d at 1322. For example, in *Coates*, a Cincinnati ordinance made it a criminal offense for "three or more persons to assemble on any of the sidewalks and there conduct themselves in a manner annoying to person passing by." *Coates*, 402 U.S. at 611. The Supreme Court found the ordinance unconstitutionally vague, because— even though "annoying" had a well-understood common meaning—the statute did not specify an ascertainable standard: conduct that annoys some people does not annoy others. *Id.*

17

The Eleventh Circuit's precedent in *Wollschlaeger*, deeming a statute unconstitutionally vague, is similarly instructive. 848 F.3d at 1323. There, a Florida statute mandated that health-care practitioners "shall respect a patient's legal right to own or possess a firearm and should refrain from unnecessarily harassing a patient about firearm ownership during an examination." *Id.* at 1319. The court took issue with the language "unnecessarily harassing." *Id.* at 1323. It explained that if "unnecessary" is measured from the patient's perspective, a doctor cannot predict her patients' individual tolerances for hearing advice—a doctor could give the same advice to two patients with drastically different responses. *Id.* at 321–22. The court noted that the provision forced doctors to choose silence or proceed with speech and potentially face punishment "according to the arbitrary whims of annoyed patients or a Board of Medicine that is wholly unrestrained by clear statutory guidelines." *Id.* at 1323.

Our case is analogous. While the Ordinance provides a definition for "intimidate," it fails to provide an ascertainable standard. Like the provision in *Wollschlaeger*, the Ordinance requires a panhandler to predict an individual's tolerance for being asked for donations. An action which might make one person feel compelled to react, will not make another feel the same way. For example, how many times may a panhandler ask for a donation before a reasonable person either feels fearful or compelled to act: twice? ten times? One more: would a reasonable person feel compelled to give a donation to the panhandler who washed their windshield? These examples show that the Ordinance encompasses a broad spectrum of behaviors that fall into a "gray zone," where individuals cannot reasonably determine whether their actions are permissible or prohibited. This "gray zone" fails to give notice to panhandlers about which speech will violate the Ordinance.

For these same reasons, the Ordinance's lack of objective standards encourages arbitrary and discriminatory enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 361 (1983). Like the criminal statute in *Kolendar*, which outlawed loitering without a "credible" identification and reason, the Ordinance here "is unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a [panhandler] must do to satisfy the" Ordinance. *Id.* Instead, it merely "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups [here, panhandlers] deemed to merit their displeasure.'" *Id.* at 360 (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97–98 (1940)). It takes little more than a thought experiment to see this risk: no firefighter would be cited under the Ordinance for collecting donations from passersby, nor girl scout for her persistence in the same.

Applying these precedents, the Ordinance is unconstitutionally vague for failing to set an ascertainable standard that defines what behaviors it prohibits.

## II. PLAINTIFFS HAVE ESTABLISHED THE REMAINING CRITERIA FOR A PRELIMINARY INJUNCTION.

### A. Plaintiffs Will Suffer Irreparable Injury Absent a Preliminary Injunction.

"[I]t is well settled that the 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The abridgment of Plaintiffs' exercise of their First Amendment rights cannot be "cured by the award of monetary damages." *KH Outdoor*, 458 F.3d at 1272. *See also Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010). And as the court explained in *Messina*, these Plaintiffs may feel the chilling effect more than most First Amendment claimants because their livelihoods depend on the outcome of the case. *Messina*, 546 F. Supp. 3d at 1253. As that court put it: "Were we to

push off our injunction until the end of the case, therefore, we'd be preventing them (perhaps for six months or more) from collecting the donations they need to survive. That, we think, is precisely what the law means when it speaks of irreparable injury." *Id.* This same reasoning applies to Plaintiffs here, whose livelihoods depend in part on the outcome of this Motion. *See* V. Compl. ¶¶ 11–13, 32, 40, 48.

**B.     The Public Interest and Balance of Harms All Favor a Preliminary Injunction.**

Plaintiffs have also met the third and fourth criteria, which collapse in cases like this one against the government. With respect to the balance of harms, "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury." *Scott*, 612 F.3d at 1297. On the other side of the ledger, "the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law." *Id.* So too, because the public has no interest in enforcing an unconstitutional speech restriction, an injunction against enforcement cannot "disserve" the public interest. *Id.* at 1290, 1297. Thus, these factors, too, favor the injunction.

<u>**CONCLUSION**</u>

For these reasons, Plaintiffs respectfully request that this Court enter a preliminary injunction barring the City and its agents from enforcing the Ordinance.

Dated: May, 21, 2025          Respectfully submitted,


*/s/ Ray Taseff*_____
Dante P. Trevisani
Florida Bar No. 72912
E-mail: dtrevisani@fji.law
Ray Taseff
Florida Bar No. 352500
E-mail: rtaseff@fji.law
Florida Justice Institute, Inc.
40 NW 3rd Street, Suite 200
Miami, Florida 33128
305-358-2081
305-358-0910 (Fax)

Ryan W. Cooke (*pro hac vice forthcoming*)
Abigail L. Thompson (*pro hac vice forthcoming*)
Ellie Licata (*pro hac vice forthcoming*)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:   303.244.1800
Facsimile:    303.244.1879
Email:   cooke@wtotrial.com
        athompson@wtotrial.com
        licata@wtotrial.com

*Attorneys for Plaintiffs Patrick Mazzone, Albert*
*Steve Sandlin, and Andrew Beiss*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed today, May 21, 2025, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notifications for this case, including all opposing counsel.


By: _____*s/Ray Taseff*_____
Ray Taseff